1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

12

JENNIFER E. MARTIN,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

Defendant.

Case No. 3:16-cv-05344-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

13

14

15

16

17

18

19

20

21

Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income (SSI) benefits. The parties

have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. §

636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below,

the Court finds that defendant's decision to deny benefits should be reversed, and that this matter

should be remanded for further administrative proceedings.

22

FACTUAL AND PROCEDURAL HISTORY

23

24

On December 15, 2011, plaintiff filed an application for disability insurance benefits and

25

26

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil
Procedure 25(d), Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the
defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect
this change.

ORDER - 1

another one for SSI benefits, alleging in both applications that she became disabled beginning January 7, 2011. Dkt. 11, Administrative Record (AR), 20. Both applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held before an Administrative Law Judge (ALJ), plaintiff appeared and testified as did a vocational expert. AR 664-717.

In a written decision dated April 24, 2014, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled. AR 20-39. On March 10, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on June 6, 2016. AR 7; Dkt. 3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

    (1)    in evaluating the medical evidence in the record, including opinion evidence from Sharon Abegg, M.D., Kathleen Mayers, Ph.D., Lawrence Moore, Ph.D., Gary Gaffield, D.O., James, Bailey, Ph.D., Diane Fligstein, Ph.D., and Drew Stevick, M.D.;

    (2)    in discounting plaintiff's credibility;

    (3)    in evaluating the lay witness evidence in the record;

    (4)    in assessing plaintiff's residual functional capacity (RFC); and

    (5)    in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Dr. Moore, as well as the lay witness evidence in the record, and therefore in assessing plaintiff's RFC and in finding she could perform other jobs. Also for the reasons set

ORDER - 2

forth below, however, remand for further administrative proceedings, rather than an award of

benefits, is warranted.

<u>DISCUSSION</u>

The Commissioner's determination that a claimant is not disabled must be upheld if the

"proper legal standards" have been applied, and the "substantial evidence in the record as a

whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

*see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v.*

*Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial

evidence nevertheless will be set aside if the proper legal standards were not applied in weighing

the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of*

*Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at

1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably

drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to

determine whether the Commissioner's determination is "supported by more than a scintilla of

evidence, although less than a preponderance of the evidence is required." *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one

rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th

Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome,"

the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v.*

*Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

ORDER - 3

I.      The ALJ's Evaluation of Dr. Moore's Opinion

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence

ORDER - 4

has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

With respect to the opinion evidence from Dr. Moore, the ALJ found:

On November 12, 2012, Dr. Moore assessed the claimant with a [global assessment of functioning (GAF) score] of 65. A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in functioning, but that an individual is generally functioning pretty well, with some meaningful interpersonal relationships. Dr. Moore opined that the claimant had moderate limitations in the ability to perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances without special supervision; and complete a normal workday/work week without interruptions from psychologically based symptoms. In all other areas of functioning Dr. Moore opined that the claimant had none [sic] or mild limitations.

I give Dr. Moore's opinion significant weight. It is consistent with his observations that the claimant had only a slightly flat affect and was able to laugh; that her speech was within normal limits; and that she was cooperative, talkative and a bit dramatic. It is also consistent with the claimant's reports that she was doing "good". In addition, it is consistent with the claimant's longitudinal record, which shows that her symptoms are adequately controlled with medication.

AR 33 (internal citations omitted). Plaintiff argues that although the ALJ states she was giving

Dr. Moore's opinion significant weight, she failed to include in her RFC assessment all of the

limitations Dr. Moore found, specifically moderate (i.e., "significant") limitations in plaintiff's

ability to:

- perform activities within a schedule, maintain regular attendance, and be punctual within tolerances without special supervision; and

- complete a normal workday and workweek without interruptions from psychologically based symptoms."

AR 571-72. The Court agrees the ALJ so erred.

Defendant argues the significant restrictions the ALJ adopted adequately account for the

above limitations. The particular mental functional restrictions the ALJ adopted are:

**[Plaintiff] is limited to unskilled work with simple repetitive tasks, rare changes in the work setting, and rare judgment or decision making. She can perform work that involves no interaction with the general public as part of her job duties and only occasional superficial interaction with co-workers, dealing with things rather than people.**

AR 25 (emphasis in the original). None of these restrictions, however, specifically or adequately

take into account the significant limitations in performing within a schedule, maintaining regular

attendance, being punctual within tolerances, or completing a normal workday or workweek. As

such, the RFC the ALJ assessed does not reflect the level of weight the ALJ stated he was giving

Dr. Moore's opinion. The ALJ's findings here, therefore, cannot be upheld.

II.    The ALJ's Rejection of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

ORDER - 6

1   germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

2   link his determination to those reasons," and substantial evidence supports the ALJ's decision.

3   *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,

4   694 F.2d at 642.

5
        In regard to the lay witness evidence in the record, the ALJ found:
6
7           I have also considered third party statements in assessing the claimant's
            residual functional capacity. On January 3, 2012, the claimant's friend Laura
8           Judd wrote a statement on behalf of the claimant. She reported limitations due
            to the claimant's mental impairments such as difficulty with focus, that she
9           does not do social things anymore, that she cannot get her to leave the house,
            and that she sleeps a lot. However, she also reported that the claimant comes
10          to her house for visits, that they watch television, and that she takes the
            claimant on errands. In terms of her physical limitations she reported that the
11          claimant is able to do most things except lift heavy objects due to her back
            problems. The above RFC accounts for the limitations identified by Ms. Judd.
12
13          On February 18, 2011, Kathryn Lee Martin, the claimant's mother, who is
            also a licensed mental health counselor, prepared a very detailed function
14          report regarding the claimant's activities. In particular, she reported that the
            claimant's work was the biggest stressor since she started working in the
15          hospital where she was required to work in a fairly stringent structure and
            perceived constant criticism. In terms of her physical condition, she reported
16          that physically the claimant is able to do all her household chores. However,
            she also reported that her back is at risk every time she bends, lifts, and twists,
17          and that vacuuming can cause spasms. Again, the above RFC accounts for the
            claimant's work related stress by limiting her to unskilled work with simple
18          repetitive tasks, rare changes in the work setting, and rare judgment or
            decision making. The physical limitations identified by Ms. Martin are also
19          considered. However, the objective medical evidence and the opinions of
            medical doctors regarding the claimant's physical abilities are not consistent
20          with her statements regarding the ability to bend, lift, and twist.
21
22   AR 37 (internal citations omitted).
23
        Plaintiff argues the ALJ's evaluation of the above lay witness evidence is erroneous,
24
     because the ALJ's RFC assessment does not fully account for the limitations described by Ms.
25
     Judd and Ms. Martin. The Court agrees. As plaintiff points out, both lay witnesses described
26
     symptoms and limitations that are not necessarily fully accommodated by the RFC assessment

ORDER - 7

with which the ALJ assessed her. For example, Ms. Judd stated she cannot get plaintiff to leave her house, plaintiff is almost house bound and sleeps all day, and she cannot get plaintiff to do anything because she is so depressed. AR 135-36. Such limitations clearly would have an impact on plaintiff's ability to get to work and accomplish work-related tasks. Ms. Martin stated that plaintiff's depression severely limits her ability to care for herself and her home, that plaintiff shops "only when absolutely necessary," and that accepting critical feedback "has become a major point of contention for her." AR 155-56, 158. Again, these observed limitations bear greatly on plaintiff's ability to get to work and perform work-related tasks, as well as on her ability to accept criticism, including from supervisors. Because the ALJ did not give any reason for rejecting observed limitations such as these, yet at the same time failed to fully accommodate them in the RFC assessment, she erred.

III.    The ALJ's RFC Assessment

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing

ORDER - 8

1   a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

2   functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

3   medical or other evidence." *Id.* at \*7.

4       The ALJ found plaintiff had the RFC:

5
6       **to perform light work . . . She can occasionally climb, balance, stoop,
        kneel, crouch, and crawl,[]but she can never climb ladders, ropes, or
7       scaffolds. She must avoid concentrated exposure to extreme cold and to
        fumes, odors, dusts, and gases. She must avoid concentrated exposure to
8       vibrations and hazards, such as machinery and heights. She is limited to
        unskilled work with simple repetitive tasks, rare changes in the work
9       setting, and rare judgment or decision making. She can perform work
        that involves no interaction with the general public as part of her job
10      duties and only occasional superficial interaction with co-workers,
        dealing with things rather than people.**

11
12  AR 25 (emphasis in the original). But because as discussed above the ALJ erred in failing to

13  properly evaluate the medical opinion evidence from Dr. Moore and the lay witness evidence in

14  the record, the ALJ's RFC assessment cannot be said to completely and accurately describe all of

15  plaintiff's functional limitations. Accordingly, the ALJ erred here as well.

16  IV.    <u>The ALJ's Step Five Determination</u>

17      If a claimant cannot perform his or her past relevant work, at step five of the sequential

18  disability evaluation process the ALJ must show there are a significant number of jobs in the

19  national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir.

20  1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational

21  expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

22  An ALJ's step five determination will be upheld if the weight of the medical evidence supports

23  the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir.

24  1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's

25  testimony therefore must be reliable in light of the medical evidence to qualify as substantial

26  ORDER - 9

evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 38-39. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – also cannot be said to be supported by substantial evidence or free of error.

V.     Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

ORDER - 10

record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Contrary to plaintiff's contention, issues remain in regard to the medical opinion and lay witness evidence in the record, as well as plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy. Remand for further consideration of those issues is therefore warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 14th day of March, 2017.


Karen L. Strombom
United States Magistrate Judge

ORDER - 11